IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 03-cv-0156-RPM-BNB

GLADYS ANTONIO,

    Plaintiff,

v.

SYGMA NETWORK, INC.; and
SYSCO CORPORATION,

    Defendants.

_____

ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
_____

The plaintiff Gladys Antonio is an African woman from Zimbabwe who brings claims for race/national origin employment discrimination (first claim), race discrimination and retaliation (second claim), promissory estoppel (third claim), and breach of covenant of good faith and fair dealing (fourth claim). Defendant SYGMA Network, Inc. ("SYGMA") moved for summary judgment of dismissal as to all claims on the basis that the undisputed material facts are insufficient to support Ms. Antonio's claims. Defendant SYSCO Corporation ("SYSCO") joined in SYGMA's motion and also moved for dismissal because it was not Ms. Antonio's employer.

From the papers filed there is some evidentiary support for the following statement of facts. Ms. Antonio is from Zimbabwe and was hired by SYGMA in July 2000 as a staff

accountant after interviewing with Heidi Blashaw, SYGMA's human resources manager, Dena Johnson, who became Ms. Antonio's immediate supervisor, and Allen Stetson, Ms. Johnson's supervisor. The application for employment and receipt for employee handbook signed by Ms. Antonio stated that she was employed at will. The handbook contained statements about matters such as "the importance of openness, honesty, and integrity" and SYGMA's equal opportunity/affirmative action philosophy.

Ms. Antonio left SYGMA's employment when her work permit expired on December 31, 2000. Ms. Antonio was trying to change her status to a permanent resident and SYGMA tried to assist her, including paying for a consultation with an immigration lawyer. Ms. Johnson, Mr. Stetson, Ms. Blashaw and Sherry Damico, to whom Mr. Stetson reported, agreed to keep Ms. Antonio's position open during this period. Ms. Antonio obtained her permanent residency status and was rehired on March 20, 2001.

Shortly thereafter, Ms. Johnson spoke to Ms. Antonio about her body odor. Although there is some dispute about exactly what was said during that conversation, it is undisputed that Ms. Johnson raised an issue of whether Ms. Antonio's body odor was related to her "culture."

The next day, Ms. Antonio spoke with Ms. Johnson about their previous day's conversation saying that she felt "alienated" and was "unhappy" about it. Ms. Antonio also complained to Ms. Blashaw saying she felt harassed by Ms. Johnson. After learning of the complaint, Mr. Stetson spoke to Ms. Johnson, as did Ms. Blashaw, separately telling her that

she could have acted better or differently.

Ms. Antonio said that thereafter Ms. Johnson was not particularly interested in talking to her and was "cold" toward her. In July 2001, Ms. Antonio received an evaluation from Ms. Johnson and received a raise that Ms. Antonio did not think was unfair. Ms. Antonio also did a self-appraisal where she wrote the following:

> I cannot point out specific situations that have affected by job performance negatively. . . . Currently, I cannot pinpoint any additional training that I need. My immediate supervisor [Johnson] has been an excellent source of training and assistance. There is no limit to the amount of help and clarification that she is willing to provide, and as a result I have learned a great deal from her.

(Ex. M.)

Also in July, Ms. Antonio asked Ms. Johnson for three weeks off, from December 7-28, 2001, returning to work on Monday, December 31, 2001. Ms. Antonio and her husband, also from Zimbabwe, left for Africa and were at the Johannesburg airport on December 29 (Saturday) to return to the United States when they were stopped. Ms. Antonio testified that airline personnel said their "papers [were] inadequate to travel back to the United States." They needed to get in touch with the American Consulate on Monday, December 31. Ms. Antonio called Ms. Johnson at work that Saturday, told her the situation, and said she would call Ms. Johnson on Monday. Ms. Johnson asked Ms. Antonio to keep her updated.

On Monday, December 31, Ms. Antonio called Ms. Johnson at work and said the Consulate was closed as it was a holiday. Ms. Antonio said she would call Ms. Johnson on

Wednesday, January 2, but did not do so. No one at SYGMA heard from Ms. Antonio from Wednesday through Friday, January 4, 2002. Because Ms. Antonio had not contacted anyone at SYGMA, on Friday, January 4, Ms. Johnson, Mr. Stetson, Ms. Damico, and Ms. Blashaw met, discussed the situation and decided to consider Ms. Johnson's job abandoned. Because approval of SYGMA's vice president of human resources was needed they called Ellen Hribek Jones, explained the circumstances, and she authorized the termination. A letter of termination dated January 4, 2002, was sent to Ms. Antonio. A new accountant, a woman of different race and ethnicity, was hired about a month later.

Ms. Antonio testified that she was unable to contact SYGMA because of problems with the telephone lines. Ms. Antonio said that when she and husband went to the Consulate on Wednesday, January 2, they learned her papers were okay for travel but her husband's were not so they left for Zimbabwe on Thursday to clear up her husband's paperwork. Ms. Antonio further testified that between Wednesday and Friday (January 2 and 4), she tried but was unable to reach SYGMA. She did not try to reach anyone over the weekend (January 5-6).

According to Ms. Antonio, on Monday, January 7, she called Ms. Johnson at work and explained the situation and that she would be in over the weekend to catch up. She was not informed of her termination.

Ms. Antonio arrived back in the United States on Friday, January 11, and called Ms. Johnson who at that time told Ms. Antonio that she had been terminated.

4

To establish a prima facie case of retaliation, the employee must show she engaged in protected opposition to discrimination, her employer took an adverse employment action against her after the protected activity, and a causal connection between the protected activity and the adverse action. If the employee establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the employer meets its burden, "summary judgment against the [employee] is warranted unless she shows that there is a genuine issue of material fact as to whether the [employer's] reason is pretextual." *Medina v. Income Support Division State of New Mexico,* ___ F.3d ___, 2005 WL 1519061 at *4 (10th Cir. 2005).

In this case, assuming Ms. Johnson's comments were discriminatory, Ms. Antonio fails to establish a causal connection between her complaint to Ms. Blashaw about Ms. Johnson and her termination more than nine months later. This time lapse is too great to give rise to an inference of a causal relationship and Ms. Antonio has failed to introduce other evidence sufficient to support such an inference. *E.g., Bones v. Honeywell Intern., Inc.,* 366 F.3d 869, 879 (10th Cir. 2004) (ten months, standing alone, is too long a time lapse to support an inference); *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997) (three month time lapse, standing alone, insufficient to establish a causal connection). Ms. Johnson gave Ms. Antonio a fair evaluation and Ms. Antonio gave a positive self-evaluation more than three months after the incident and more than five months before she was terminated.

Even assuming there is sufficient evidence to support a prima facie case of retaliation, the defendants have articulated a legitimate, nondiscriminatory reason for Ms. Antonio's discharge as she failed to return to work as scheduled and failed to contact her supervisor from January 2 through January 4, the date of her termination. The accountants had monthly and quarterly closings and the critical week of the quarterly close was the week Ms. Antonio was scheduled to return where she had deadlines every day. This was a black out period where accounting staff was generally not allowed to take vacations. Ms. Antonio has presented insufficient evidence that SYGMA's proffered reason for her termination was pretextual.

Accepting that Ms. Antonio established a prima facie case of race/national origin discrimination, SYGMA's legitimate, nondiscriminatory reason was not shown to be pretextual.

The claims for promissory estoppel and breach of explicit covenant of good faith and fair dealing fail as Ms. Antonio was employed at will, the statements allegedly relied upon were insufficient to constitute legally enforceable representations, and no breach of any provision has been established. It is therefore

ORDERED that defendant SYGMA's motion for summary judgment of dismissal, joined by defendant SYSCO, is granted. Defendant SYSCO's summary judgment motion on the issue of whether it was Ms. Antonio's employer is moot. The clerk will enter a judgment dismissing Ms. Antonio's claims against both defendants with an award of costs to the defendants.

DATED: July __11th__, 2005

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge